UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Cr. No. 12-297 (DSD/LIB)

| | |
|---|---|
| United States of America,<br>        Plaintiff,<br><br>v.<br><br>Mark Allen Isham,<br>        Defendant. | )<br>)<br>)<br>)    Defendant's Position as to Sentence<br>)<br>)<br>)<br>)<br>) |

Mark Allen Isham, the Defendant, by and through the undersigned counsel, hereby submits this position as to sentencing for consideration by the Court. The pre-sentence report found that Mr. Isham has a criminal history category of III and total offense level of 19. The resulting guidelines range is 37 to 46 months. While the calculations in the report are accurate, Mr. Isham submits that the criminal history category is overstated and, further, that there are mitigation considerations that support a sentence below the guidelines range.

**I.    Considerations under 18 U.S.C. Sec. 3553(a).**

Neither the U.S. Sentencing Guidelines nor the Government have addressed considerations that look to the circumstances of Mr. Isham's life. Additionally, neither addresses facts that support a below guidelines outcome in this case. Yet, the circumstances of Mr. Isham's life, his successes in the past – including since his period of detention at the Bethel Halfway House – and the background that presents in the instant offense, all support a below guidelines sentence.

    **A.    The History and Characteristics of Mr. Isham.**

        **1.    Active and Involved for the Past Two Years.**

A hardworking, soft spoken man, Mark Isham grew up in Minneapolis, Minnesota. Since December

11, 2012, he has resided at the Bethel Halfway House in Duluth, Minnesota, following a condition set by Magistrate Brisbois when the case was first charged out.

The rules and regulations at Bethel Halfway House are onerous. Many individuals sent there struggle with the procedures set up for the residents. Mr. Isham has done well. In addition to completing the recommended chemical dependency treatment, he has continued to be actively involved in the 12-step groups in Duluth. We raise this issue, in part, to highlight that he has done well in what is an unusually long period of time to be housed there, and, in part, to highlight that Mr. Isham has not been living out on his own during the duration of this case. Rather, he has spent more than a year in a custodial setting of the Bethel Halfway House.

He has not sat idly by awaiting the conclusion of this case. Employment is not easy to come by in Duluth. It is even more challenging when you have a criminal background and no advanced education. Despite these obstacles, Mark Isham has regularly sought out and found employment. Currently, he is on staff at the Spirit Mountain Ski Area. He has also worked doing tree removal, chimney repair and snow removal. The jobs are labor intensive and Mr. Isham, now 49 years old, does not shy away from them. He prefers to be employed and busy. The jobs have been seasonal. As a result, he is back out seeking employment at the end of each job.

In addition to working to maintain his sobriety and employment, Mr. Isham has regularly met with the chaplain at the halfway house. He has found the chaplain to be an additional support for his sober, productive daily life.

While he is allowed to go to 12-step meetings and to work, the Bethel Halfway House is a locked unit. Residents cannot simply come and go. The staff keeps a close watch over the residents, monitoring their activities.

After almost a year of sobriety, Mr. Isham "fell off the wagon." He participated in a Relapse Treatment Program recommended by the staff Bethel. Upon completion of that program, his counselor found that "Mr. Isham's continued recovery looks good at this time." (Letter dated January 29, 2014.) He has

continued to be involved in the aftercare program and AA meetings, because he prefers the way sobriety feels. When sober, he is productive and happy.

### 2. His Earlier Life.

Despite having little contact with his father – who moved away when he was young – he reports that his childhood was uneventful. A close look finds a young child growing up in a single-parent household with five siblings. Although the home was modest and the resources of his mother consistent, it was a simple life. His mother reports that they lived, primarily, on county assistance.

He began drinking at the very early age of 15. Almost immediately, he began drinking heavily. For some, alcohol connects with the body in such a way that the body yearns for it. That is the case for Mr. Isham. By the age of 17, he was smoking marijuana, too. And, while he experimented with a variety of substances, Mr. Isham found alcohol to be the substances that he simply could not shake. The impact that alcohol, and his addiction to it, is seen throughout his life. Unfortunately, the story that accompanies his abuse of alcohol paints an ugly picture.

The underpinnings of his substance abuse may be connected to his academic struggles. Learning disabilities made school a challenge. He wanted to do well and struggled with the difficulty he had learning. Special education resources were less available in the late '70s and early 80s. To deal with the stress, he began to experiment with drugs and alcohol. Little did he know that his body would be drawn to the chemical effects of alcohol.

When reviewing his criminal history, it is immediately clear that his prior convictions – and the instant offense – are directly related to his abuse of alcohol. The soft-spoken man is no more, once he has been drinking. The instant case stems from arguments that arose with his now ex-girlfriend. On all of the occasions leading up to the indictment – which snowballs prior misdemeanor domestics into a single federal charge of Habitual Offender – all of those occasions involved both parties drinking. As noted in the police reports, officers would arrive at the home and find that both C.K. and Mr. Isham were intoxicated.

He does not use his drunken state at the time of the fights as an excuse. Rather, through his honest recollections he is able to embrace the multiple levels of bad behavior and poor choices that led to the instant indictment. In so doing, his success at changing his behaviors can more likely be long-term.

Mr. Isham holds great shame about these times. His regret is palpable. The pain he has caused, the damage to a relationship of several years, and the break up of his family all weigh on him. He has utilized the resources of A.A. and recovery to continue dealing with the underlying behaviors. Additionally, his support network provides a place of healing around the pain he carries as a result of the pain he has caused.

These facts are significant. When the considerations set forth in 18 U.S.C. §3553(a) are weighed, these factors are all significant and weigh greatly on where the final punishment should land. §3553(a) looks heavily to what factors will lead to a non-recidivism. All of the considerations set forth in §3553(a)(2) deal directly with what sentence will deter future action – and in so doing, protect the community, and lead the defendant to non-criminal success. Through his acceptance of his actions and deeper understanding of them, Mr. Isham is taking steps toward continued success. He has taken classes that were needed. He has righted himself so as to protect the community and ensure a life of normalcy is there, daily.

### iii. Untreated Head Injuries May Impact His Cognitive Skills.

At the time of the pre-sentence interview, Mr. Isham was aware of one head injury that occurred in 1983. (PSR, Para. 51.) During the course of this case, the investigator for Mr. Isham's attorney unearthed medical records related to another head injuries he suffered. Although he received treatment for the cuts to his scalp, no examination was made to ensure that there was not linger head trauma. The question is whether the concussions he suffered might, in fact, result in a heightened response to substance abuse. In other words, when he drinks, his behavior becomes even more problematic. The police reports would bear this out.

The significance of the role of his brain injuries may tie into the heightened response he has had to alcohol. Additionally, the recovery time likely is longer due to these injuries.

### C. Looking Toward the Future.

Mr. Isham looks forward to returning to a life of normalcy. He has family in the Twin Cities and outside of Duluth. He looks forward to obtaining a full-time job and living either in Twin Cities or in the central part of the state with one of his brothers. Once on supervision, he will establish his 12-step community, as he has done in Duluth. His work ethic will serve him well. He will return to job seeking, with the goal of finding full-time employment. His will be a simple life, one of work, home, and family.

**II.     Truly Weighing 18 U.S.C. Sec. 3553(a).**

The sentencing factors set forth by Congress are words that get spoken at each sentencing. The question is always how those factors will weigh in a certain case. What message will be sent to the community as a way to promote respect for that law? What programs are needed for a defendant that can only be obtained inside prison walls? What does "adequate deterrence" mean?

As the considerations of the facts of this case are weighed, a message can be sent that taking strides to right one's life will be given credit. Promotion of the law can be weighed as being seen through one's success at addressing the causes underlying criminal behavior. The success of a defendant in programming while on pre-trial detention can be weighed as a sentencing mitigation. The constant employment and productive use of time while on pre-trial detention weighs toward mitigation.

If the message to be sent to defendants is behavior that is criminal will not be tolerated, shouldn't, too, that message include recognition – through sentencing departure/variance – when a defendant has doing those things that the law, the Courts and the community call for him to do?

Importantly, the question becomes a review of how prison will impact the steps he has made in the more than a year since this indictment. He has a solid period of time in the community, connecting with a sober network, structuring a sober life. To return him to prison, as the Government suggests, erases the learning Mr. Isham has done. The Government's recommendation serves to turn the clock backwards, placing Mr. Isham in a place where he will not be in the community continuing to build the sober skills he has developed. Sending Mr. Isham at this point is like taking a person who has finally learned to walk again and putting them in a locked chair for the period of incarceration. Muscles weaken, mind skills

lessen.  In short, the term of imprisonment requested by the Government will serve to undo Mr. Isham's progress.  More notably, such an outcome will fail to fulfill the requirements and goals of the sentencing law.

Mark Isham owns his actions.  He has made amends for those harms by making work and the 12-step community the focus of his life.  Respectfully, it is asked that these considerations be viewed in the significant light to which they are owed.

### A. Considerations Beyond the Guidelines.

Mr. Isham's ability to work and engage in chemical dependency treatment was made possible through his placement at Bethel Halfway House.  However, the environment is a restrictive one.  Additionally, he has not been able to be with his family – siblings and mother – except in very rare instances.  Respectfully, we ask that Court weigh the limitations on his freedom since December 2012.

### III. Conclusion.

A sentence below the guidelines range is called for in this case.  The factors set forth in the record are not considered by the U.S. Sentencing Guidelines.  The guidelines range of 37 – 46 months is well beyond what is reasonable and necessary in this case.  Additionally, the U.S. Sentencing Guidelines fail to take into account the specific circumstances of the case and the underpinnings of Mr. Isham's life.

Respectfully, Mr. Isham moves this Court for a sentence of not greater than one year and one day.  The variance of 25 months is supported by the facts of the case and sentencing law.

Date: February 17, 2014             */s Caroline Durham*
                                    Caroline Durham
                                    Atty. ID No. 24921X
                                    Attorney for Mr. Isham
                                    413 Wacouta St., Suite 430
                                    St. Paul, MN  55101
                                    (612) 272-9111